Abrams *v.* Kounts and Quinn.

ment, either expressed or implied, must exist. Presumptive evidence will do, such as that the defendant holds over after the expiration of his lease by parol. Osgood *v.* Dewey, 13 Johns. 240 ; 3 Stark. Ev. 1516; 13 Johns. 297.

But the facts must show, expressly or impliedly, that the defendant occupies as tenant of the plaintiff. In the case of Smith *v.* Stewart, 6 Johns. 46, the defendant took possession of lands as a purchaser from the plaintiff, and by his consent, but afterward refused to pay, and abandoned the contract. The court say, as the defendant did not enter under the relation of tenant, but under a contract for a deed, the plaintiff could not recover in this form of action. The same principle was decided in the case of Bancroft *v.* Wardell, 13 Johns. 489 ; 1 Esp. N. P. 20 ; Woodfall's Term Law, 432 ; 3 Serg. & Rawl. 500 ; 17 Mass. 299 ; 2 Green. 337 ; 1 Munf. 407 ; 3 Dall. 503. These authorities establish the principle, that when a person occupies the land of another, not as tenant, but adversely, or, where the circumstances under which he enters, show that he does not recognize the owner as his landlord, this action will not lie. The remedy is trespass for mesne profits, after a recovery in ejectment.

It has been determined that a defendant can not in this action dispute the title of the plaintiff, and that *nil habuit in tenementis*, is a bad plea. Lewis *v.* Willis, 1 Wil. 314 ; Cook et al. *v.* Loxley, 5 Term, 4 ; 2 Wils. 208. In the principal case, the facts admit that Bixbe entered claiming title. This surely rebuts the implication of the relation of landlord and tenant.

*There is no express contract to pay rent; consequently [214 the plaintiffs can not recover on the facts before the court.

Judgment of nonsuit.

---

MARIA ABRAMS *v.* HIRAM KOUNTS AND JOHN QUINN.

Where a bond recites that the obligors "are held and firmly bound, in the penalty of a thousand dollars, for the performance of a marriage contract, which said H. K. engages to perform with M. A.," the thousand dollars must be deemed a penalty, and not liquidated damages. Covenant does not lie upon such a bond.

THIS cause was adjourned here for decision from the county of

Abrams *v.* Kounts and Quinn.

Columbiana. It was an action of covenant founded upon a sealed writing, in the following words:

"Know all men by these presents, that we, Hiram Kounts and John Quinn, of the county of Columbiana, and State of Ohio, are held, and firmly bound, in the penalty of one thousand dollars, for the true performance of a marriage contract, which the said Hiram Kounts engages to perform with Maria Abrams, of Brooke county, Virginia, against the 8th day of February next. The conditions of the above obligation are such, that if the above bound Hiram Kounts does well and truly perform the above obligation, this obligation to be void, otherwise, etc." Dated, January 22, 1827.

The declaration contained six counts. In all, the capacity of the plaintiff, as a *feme sole*, to make a contract of marriage is averred. In some, a promise on the part of the plaintiff to marry the defendant Kounts, is averred; in one, this is omitted; in one, a mutual promise is set out; and in the second count it is averred, in addition, that the defendant Kounts, by promise of marriage, had seduced the plaintiff, in consequence whereof, at the time of making the contract, she was pregnant. As no exception was taken to the form of the declaration, it seems unnecessary to describe it more minutely.

To all the counts but the second, the defendants demurred generally, and the defendant joined in demurrer. To the second count the plaintiffs pleaded three separate pleas, alleging that Kounts was imprisoned by the plaintiff, and by duress was induced to make and execute the bond. Upon *these replications the plaintiff joined issue. The cause was adjourned here for decision upon the demurrers.

LOOMIS & METCALF, in support of the demurrer:

We contend that the plaintiff can not recover, upon any of the counts, to which the defendants' demurrers, in the present state of the pleadings, apply. Those counts are, we conceive, radically defective in various particulars. There is not, in the instrument upon which the plaintiff has counted, and which is spread upon the record, in the defendants' demurrer, any covenant on the part of Kounts and Quinn both, with Maria Abrams, the plaintiff, or any other person. This objection is believed to be fatal. A covenant, on the part of Kounts alone, can not be made the foundation of a

joint action against him and Quinn. The case made upon the pleadings, would be variant from the evidence adduced to support it. A joint recovery can never legally rest upon evidence of a several liability. There is a defect in the instrument upon which the plaintiff has declared, that can not be supplied by averment and parol proof. There is a want of title in the plaintiff, which can not be supplied without changing essentially the legal opera-- tion and effect; without adding to, and altering the written instru- ment, which is the sole support of the plaintiff's action. This the law will not tolerate. Grun *v.* Horne, 1 Salk. 197; Croke Jam. 505; 1 Phillip's Ev. 433, note; Grant *v.* Naylor, 4 Cran. 224.

It appears manifest to us, that an action of covenant can not be supported on the instrument before mentioned, against the defend- ants jointly, for other reasons. This court has decided, in the case of Huddle *v.* Worthington, 1 Ohio, 423, that an action of covenant can not be supported upon the condition of a bond, separated, in the pleadings, from the penal or obligatory part. An action of covenant could not, in this case, be supported upon the condition, unconnected with the penal or obligatory part of the bond, as there is nothing to distinguish this, so far as it relates to the condition of the bond, from the case of Huddle *v.* Worthington. In that case, an action of covenant, probably, could have been supported upon the penal and obligatory part of the *bond, as it is alleged, [216 in the report of the cause, to have been in the usual form. But in this case, it is submitted that an action of covenant, upon the penalty of the bond, could not be maintained. There is no cove- nant or agreement in the penal part of this bond to pay, but the mere acknowledgment of a debt, or duty. Although the line of demarkation between the actions of debt and covenant, may, in some instances be narrow, still it is clear and well defined in the books. We take the law to be this: when there is a mere ac- knowledgment of a debt or duty, there debt only will lie; when there is an agreement, or a man obliges himself to pay, or do any other act, then covenant can be sustained. This distinction is supported by principle and authority. Harden, 178; 2 Bacon Abr. 63, note, Covenant, A.

If an action of covenant can not be maintained upon the penalty of this bond, nor upon the condition unconnected, in the pleadings, with the penalty, we confess ourselves at a loss to discover upon

what reason, principle, or authority it could be maintained upon both together.

Several objections apply to the counts separately. To the first, it is objected that it alleges no covenant on the part of Kounts and Quinn both. It states, after setting out the instrument, that Kounts, by the instrument, bound and obliged himself to marry the plaintiff, against February 8, 1827, and 'assigns for breach that he has not married her, nor he, or Quinn, paid the sum of one thousand dollars. In the count there is not a sufficient title set forth, nor is there a joint covenant or liability averred. The legal effect of the instrument set forth is averred to be an obligation by Kounts to marry the plaintiff. Such, we admit, if it have any, to be the true and only legal effect of the bond. No covenant by Kounts and Quinn both, either that Kounts should marry the plaintiff, or that he and Quinn jointly should, in the event of his failure to do so, pay the plaintiff one thousand dollars, as averred in that count. The breach assigned is therefore too broad. It negatives the performance of a covenant not previously alleged in the count to have been made.

The third count, after setting out the obligation, alleges that Kounts thereby became bound to marry the plaintiff, on or before 217] February, 1827, or, on failure thereof, *that Kounts and Quinn would pay the plaintiff the 'sum of one thousand dollars as damages; the breach is, that Kounts has not married the plaintiff, nor he or Quinn paid the one thousand dollars. The averment that Kounts and Quinn agreed to pay one thousand dollars as damages, is beyond the terms of the obligation. The obligation contains *eo nomine*, a penalty; the averment makes it a case of agreed and liquidated damages. A jury, under this averment, could give no less than one thousand dollars; they would have no discretionary power, no proof could be adduced in mitigation of damages. It is not alleged in this count that the defendants covenanted or agreed with the plaintiff; it is not, in truth, alleged that Kounts and Quinn covenanted at all, but merely that Kounts covenanted to marry the plaintiff, or on failure thereof, that he and Quinn would pay her a thousand dollars as damages. The breach, in this count, is defective upon the same ground as that in the first. That this is not a case of agreed damages, we think too clear to admit of doubt. The parties have themselves denominated it a penalty, and there is nothing discoverable in the contract to induce a belief that they

intended anything different from the natural and ordinary accceptation of the terms which they have used, or that would justify the court in deviating from the ordinary interpretation of those terms. We shall not go into an elaborate argument on this point, until we shall have discovered from the reasoning and authority that may be urged and adduced by the plaintiff's counsel, the propriety at least, if not the necessity, of such a procedure. Smith *v.* Dickinson, 3 Bos. & Pul. 630.

" Where a sum is expressed to be a penalty, it will not be considered to be liquidated damages." 1 Swift's Dig. 680, and authorities there cited.

The fourth count alleges, that Kounts and Quinn bound themselves to the plaintiff under the penalty of one thousand dollars, that Kounts should perform a marriage contract with her, *against* February 8, 1827, and if not, the obligation for the penalty of a thousand dollars should remain in full force. Breach, that Kounts has not performed the marriage contract, nor he and Quinn, or either of them, paid the thousand dollars. There is a fatal variance between this count and the obligation set out on oyer. The count states *that the defendants bound themselves to the plaintiff [218 under a penalty, and the obligation does not show that they bound themselves to the plaintiff or any other person. The obligation is not, in this count, set forth according to its legal effect. It is not averred that Kounts and Quinn covenanted to pay the plaintiff a thousand dollars in any event, consequently the breach assigned is not warranted by the facts previously alleged.

The fifth count charges that the plaintiff and Kounts had mutually agreed to marry, and that Kounts and Quinn agreed, and firmly bound themselves in the penal sum of one thousand dollars that Kounts should perform the aforesaid marriage contract against February 8, 1827, and on his failure that the said obligation for one thousand dollars should remain in full force and virtue. Breach, that Kounts has not married the plaintiff, nor he and Quinn paid the one thousand dollars. The plaintiff's counsel has, in this count, gone entirely beyond the terms and legal effect of the obligation. He has averred facts that do not exist in the obligation. To admit such averments would be, in effect, to make a new contract for the parties, and to prostrate legal principles well established. The contract of the parties, and their intention, ought to be gathered from the obligation, and from that only.

There is not a word in the obligation relative to a previous marriage contract between the plaintiff and Kounts, nor does it contain a covenant to perform any previous contract. The averments in this behalf are, therefore, gratuitous and unwarranted. It is not charged in this count that the defendants covenanted or agreed with, or in any manner bound themselves to the plaintiff. There is, consequently, a total defect of title in the plaintiff apparent upon the face of the count.

In the sixth count, it is alleged that Kounts and Quinn promised and bound themselves, among other things, that Kounts should, against February 8, 1827, marry Maria Abrams, by the name of Maria Abrams, of Brooke county, Virginia. Breach, that Kounts has not married her. The decision in Huddle *v.* Worthington is conclusive against the validity of this count. No title whatever in the plaintiff is alleged. It is not shown that the defendants covenanted with her or bound themselves to her.

*The demurrers to all the foregoing counts, it is believed, ought to be sustained, as well on account of the general exceptions taken to the action, as the specific objections to the individual counts.

GOODENOW, for plaintiff:

The first point, which the counsel for the defendants seem to raise, on the construction of the obligation, is, that it contains no covenant, by both the defendants, with the plaintiff; that there is no joint, but a several liability. This objection, if valid, would defeat the plaintiff, in any form of action against both the obligors; and, of consequence, against either, except covenant against Kounts, on the covenant to marry; and how such a separate liability would be enforced, on this instrument, I can not conceive, unless by a bill in equity for a specific performance.

I can hardly think it is necessary for me to quote authorities, on the question, what words will create a covenant; or in what manner an instrument, like the present, is to be construed; nevertheless, I will refer the court to the long-established doctrines on the subject, as they are given to us in the best authors.

"The law does not seem to have appropriated any set form of words, which are absolutely necessary to be made use of, in creating a covenant and, therefore, it seems that any words will be effectual for that purpose, which show the parties' concurrence to the performance of a future act." 1 Bac. Abr. 527; Hallet *v*

Wylie, 3 Johns. 44; Harris v. Nicholas, 5 Munf. 483; Doug. 27, 766; 1 Roll. 518, l. 50.

Every party to a deed, who is interested in the covenants therein, is entitled to his action. 6 M. & S. 77; 3 B. & B. 335; 5 D. & R. 234.

The right of action follows the interest in all cases, 1 Saund. 155, c; and it lies for any liquidated sum. 1 Saund. 241, n. 5.

A covenant shall be expounded with regard to the context and intent of the deed. R. Hob. 275; 6 Johns. 49; 1 Johns. Cases, 319; 10 Johns. 266.

"All contracts are to be taken according to the intent of the parties, expressed, by their own words, and if there be *any [220 doubt, in the sense of the words, such construction shall be made as is most strong against the covenanter, lest, by the obscure wording of his contract, he shall find means to evade and elude it; hence if A. (Lev. 102; Sid. 151; Kel. 511) covenants with B. that if B. marries his daughter, he will pay him twenty pounds per annum, without saying for how long, yet it shall be for the life of B., and not for one year only; for by the words, 'per annum,' the meaning of the parties appears to be, that it could continue longer than one year; and this is the construction that is most strong against the grantor." 1 Bac. Abr. 539.

Again, it is objected, that the action of covenant will not lie on the penal part of this bond, because it contains a mere acknowledgment of a debt or duty. Suppose I grant this position, what follows? Why simply this, that, had I brought covenant on the penalty alone, I could not recover. It will be time enough to combat this position when my case shall present it. The law which the gentlemen, on the other side, lay down to defeat our recovery, in covenant, is this, that, " when there is a mere acknowledgment of a debt, or duty, there debt only will lie; where there is an agreement, or a man obliges himself to pay, or do any other act, then covenant can be maintained." In reply to this, Chitty says, 1 Chit. Pl. 111, " Covenant appears, in general, a concurrent remedy with debt, for the recovery of any money demand, where there is an express or implied contract contained in the deed, and it has been holden that an action of covenant is sustainable on a bond, though debt is now the usual remedy." See also 1 Swift's Dig. 570, 571. But grant the doctrine advanced by my friends to be good sound orthodoxy, and how does it apply to the instrument.

·of contention between the two parties? Kounts and Quinn ac·
knowledge themselves "held and firmly bound (in the penalty of
·one thousand dollars), for the performance of a marriage contract,
which the said Hiram Kounts engaged to perform with Maria,"
·etc., that is, both covenant that one shall perform his engagement
with the covenantee. Does not this come, even without the con-
dition of the obligation, within the express terms of the gentle-
man's definition of what he says would sustain an action of cove-
nant? I am yet to learn that two can not oblige themselves in an
221] instrument under seal * " for the performance " of a "duty "
by· one of them, and thereby render themselves liable in an action
of covenant.

The most important question, however, and one that will un-
doubtedly require much attention, is, whether the thousand dollars,
which, in the fore part of the obligation is called by the parties a
"penalty," is to be considered in the nature of a penalty merely
in the technical sense of the word, or whether that sum is not to
be taken as liquidated damages between the parties? I think,
perhaps, a like instrument was never presented to a court for de-
cision. No man, peradventure, ever bound himself with security
to perform a marriage contract; but, if others had done so, they
probably would have used, especially if they did not employ law-
yers to draw their instrument, just such language with a little dif-
ferent collocation, perhaps. But I know not why a female may
not demand and receive security from a slippery suitor to compel
him to marry her, or forfeit a portion of his estate, to which she
would succeed if he led her to the altar. And, it seems to me,
that this case is one of the first impression, and calls upon the court
to look astutely into it, and discover, if possible, "the intent of the
parties." If they seek for the intention of all parties, they can
not, I think, hesitate to say, from ·the nature of the transaction
and the situation of the parties, that the plaintiff would never have
received the obligation from Kounts, if the condition had been
what his counsel now contends it must be construed to be, as fol-
lows: " *Provided,* if the said Hiram shall not perform his marriage
contract with the said Maria, he shall pay her whatever damage
she may thereby sustain, and on his failure to pay, the said Quinn
shall pay for him." Nor will the court, for a moment, believe that
Kounts or Quinn so intended the condition to be understood; un·
less the court can suppose them both, at the time of executing the

Abrams *v.* Kounts and Quinn.

obligation, to be governed by a fraudulent design upon an inno-cent deluded girl, and even then, the court would not permit them thus to avail themselves of the advantage of their own fraud.

"The same sense," says Lord Ellenborough, in Seddon *v.* Senate, 13 East, 74, "is to be put upon the words of a contract in an instrument under seal, as would be put upon the same words in any instrument not under seal; for the same intention must be collected from the same words of a contract *in writing, [222 whether with or without seal;" and Judge Bayley added, "a covenant is nothing more than an agreement, in construing which, we have only to look to the fair meaning of the parties." That this is sound doctrine, and the only correct principle upon which to construe all contracts, I think no one will deny. Hence, the court will control words, and even phrases, of an ambiguous or technical meaning, whenever they become irreconcilable, or repugnant to the "fair meaning" of the parties. Hence, even the word "penalty" has been held not to be used, in its technical sense, in an instrument before the court, but construed to mean agreed damages, and the phrase, "liquidated damages," has been controlled and construed to mean a penalty.

The general current of authorities on this subject will be seen in the following cases: 3 B. & A. 692; 4 Burr. 2229; 13 East, 343; 1 W. Blk. 395; 1 Camp. 78; and in Astly *v.* Weldon, 2 B. & P. 353, Judge Heath said: "It is very difficult to lay down any general principles in cases of this kind; but I think there is one that may be safely stated. Where articles contain covenants for the performance of several things, and then one large sum is stated at the end to be paid upon breach of performance, that must be considered as a penalty; but where it is agreed that if a party do such a particular thing, such sum shall be paid by him, there the sum stated may be treated as liquidated damages." And Chambers, Judge, observed, "There is one case, in which the sum agreed for, must always be considered as a penalty, and that is, where the payment of a smaller sum is secured by a larger." Where the word penalty remains uncontrolled by other words, or the nature and circumstances of the case, it will be taken in its technical sense, as in 3 Bos. & P. 630; 13 East, 345. So, also, as to the phrase, liquidated damages; but in deciding the point, the whole of the agreement and evident intentions of the parties must be consulted (6 B. & C. 222); in this last case (Davies *v.* Penton), the

court controlled the agreement of the parties, and held what they had called liquidated damages as a penalty. The distinction, which I think runs through all the authoritities, and seems to be sustained by reason and common sense, is this, where the duty, or act, to be performed or omitted, the benefit of the duty, or act, or 223] the injury resulting from its neglect, can be *measured in the ordinary way of estimating advantages and disadvantages, losses and gains; or, we might say, where we can bring the non-performance to be measured by the universal standard of worth in this world, *money;* there the sum agreed on may be taken as a penalty in the technical sense. But where the non-performance of an agreement, or covenant, in its consequences addressed to the forum of feeling, character, standing, or future peace and happiness of the covenantee, the sum agreed upon must be considered as the rule of damages, or as liquidated damages.

It seems to me preposterous, in this case, to impanel a jury to ascertain the damages the plaintiff has sustained, by the defendant, Kounts, not marrying her. She had received him to her bosom—he had deceived her; to atone, as far as it was possible for him to do it, for the injury he had inflicted upon her character, her feelings, and her peace of mind, he bound himself in solemn promise to marry her, or forfeit one thousand dollars. She could not enforce a specific performance, for he had his option to marry, or pay the thousand dollars. Not so with her—she had no option. When he chose, he might turn upon his heel and take his leave; but she was bound to accept his hand whenever he offered, or refuse, and waste her life in irretrievable wretchedness.

I will refer the court to one other authority, and I have done. The opinion of Lord Hardwicke, in Roy *v.* Duke of Beaufort, 2 Atk. 190, is directly in point. A judgment had been recovered on the "penalty" of a bond, for one hundred pounds, conditioned that the obligor would catch no more fish, etc., which condition was broken by catching two flounders, worth two pence only; and this suit in equity was brought to reduce the penalty to the actual damage. Lord Hardwicke says, "as to the head of security, it is most absurd to think that bonds of this kind (which was in a penalty) were intended merely as a security, and that nothing is to be recovered upon them. I am of opinion that when this sort of bonds are given, by way of settled damages, it is unreasonable to imagine they could only be intended as a bare security that

the obligor should not offend for the future; was this the case, in what respect is a party in a better condition who has such a bond, than he was before?"

And I may emphatically ask, in what respect is Maria in a better condition than she was before she received this *bond,   [224 if she must still rely upon a jury to ascertain the worth of a marriage contract with Hiram Kounts?

LOOMIS and METCALF, in reply:

The plaintiff's counsel, in reply to our opening argument, has referred the court to many authorities, the correctness and soundness of which we are not disposed to question. It is conceded that the "law does not seem to have appropriated any set form of words, which are absolutely necessary to be made use of in creating a covenant;" that "every party to a deed, who is interested in the covenant therein, is entitled to his action;" that "the right of action follows the interest, in all cases;" and that "a covenant shall be expounded with regard to the contents and intent of the deed." We admit, also, that "all contracts are to be taken according to the intent of the parties, expressed in their own words," and that they are to be construed most strongly against the grantor, in relation to the quantum of interest, which shall be adjudged to pass by the contract. But the admission of these positions does not, in our view, affect, or invalidate the objections taken, in our former' argument, generally to the action, or specifically to the several counts. The authority quoted from 1 Chitty does not controvert our position, that covenant can not be sustained in this case. Chitty appears to speak with surprise that the courts had gone so far as to determine that covenant could be sustained on the penalty of a bond, in the usual form, and immediately adds that "debt is now the usual remedy." The penal part of this bond is not in the usual form. It is a mere acknowledgment of a debt; no obligee named, nor any obligation of payment to any one expressed. The defendants jointly, neither agree, oblige themselves, or covenant, that they, or either of them, shall do any particular act. Kounts, and he alone, covenants. This case stands upon entirely different grounds from those where parties enter into covenants, and there bind themselves, in a penalty, for the performance of those covenants. In such case, covenant may be sustained upon the express covenant contained in the contract, or

debt upon the penalty, by which the performance of the cove-
nants is secured.   Such is the case in 1 Swift Dig. 570, 571.

225]   *It is, to our surprise, contended that this is a case of agreed
damages, and it is alleged in support of that fact, that a " like
instrument was never presented to a court for decision;" that
" this case is one of the first impression ; and calls upon the court
to look astutely into it, and discover, if possible, the intent of the
parties."   Singular reasons, indeed, for adjudging it a case of
agreed damages.   The intention of the parties seems to be sup-
posed doubtful, and difficult to be ascertained; and yet the court
are asked to give the contract the severest construction.   We had
supposed the court would never, in a doubtful case, determine a
penalty to mean liquidated damages; but that in such a case they
would rather send the parties to a jury, the appropriate forum,
to determine what damages the plaintiff had sustained.  By the
latter mode no hardship would be imposed upon the plaintiff; by
the former, great injustice might be done to the defendant.   The
case must be perfectly clear and unambiguous that could justify
any court in giving to the term " penalty" any other than its ordi-
nary signification—a security for the performance of a contract,
or, in the event of a non-performance  the payment of such dam-
ages as the party shall have actually sustained, by reason of the
non-performance.   In this sense, almost every person in commu-
nity understands the term ; and probably not one person in a
hundred ever heard or imagined that it ever was construed to mean
liquidated damages.   In ninety-nine cases of a hundred the con-
struction contended for would ensnare the parties, and work injus-
tice.   It seems to be supposed that no motive can be assigned for the
plaintiff's taking the bond, and that no benefit can be suggested
as secured by it, unless the plaintiff's construction prevail.   There
is, in our apprehension, no difficulty in assigning motives for her
extorting it, nor in suggesting advantages to be secured by it.
First, it would be supposed to contain, in itself, clear and perma-
nent evidence of a marriage contract.   Second, the performance
of that contract would be supposed more effectually secured by
the liability and responsibility of Quinn.

The question whether the sum of one thousand dollars, men-
tioned in the bond, is to be regarded as a penalty, or as liquidated
damages, depends, we admit, upon the form of the instrument, and
226] the intention of the parties, as collected *from the whole of

the instrument. If the sum be mentioned simply under the de‑ nomination of a penalty, the form of the instrument imports it to be a mere penalty, and the presumption is, that the parties did not contemplate liquidated damages. 3 Stark. Ev. 1131. The inference of a contrary intent must be perfectly clear to counter‑ act this presumption, if, indeed, it can be counteracted in any case. Although the term of the instrument, *prima facie*, import liquidated damages, they will not be considered as such if a con‑ trary intention be manifested from the whole of the instrument. Thus, although the agreement concluded in this form: "Lastly, it is hereby agreed that either party, refusing to perform their un‑ dertaking, shall pay to the other two hundred dollars," although this appeared to be contract and no penalty, the court held that they were to look to the whole of the instrument. 3 Stark. Ev. 1131.

Chitty, in his treatise on Contracts, p. 335, says: "It may be safely remarked that the courts have shown an inclination to view, if possible, the sum reserved, as in the nature of a penalty, rather than as stipulated damages."

Lord Eldon, in the case of Astley *v.* Weldon, 2 B. & P. 350, in commenting upon the case of Sloman *v.* Walter, 1 Brown's Ch. Cas. 418, remarked that in that case, "by the very form of the instru‑ ment, the sum appeared to be a penalty, in which case a court of equity could never consider it as liquidated damages, but must direct an issue of *quantum damnificatus*." This is a strong author‑ ity against the *dictum* contended for by the gentleman opposed to us, and so far as the opinion of that distinguished jurist, Lord Eldon, is entitled to consideration, is conclusive. The power and duty of courts of law and equity, in relation to the chancerying down the penalties of bonds, are now precisely alike, and when‑ ever a chancellor would be bound to direct an issue of *quantum damnificatus*, a court of law ought to direct an assessment of dam‑ ages, by jury, upon the same principle.

Our opponent appears to us to have been unfortunate in quoting the case of Lowe *v.* Peters, 4 Burr. 2225. That was, in terms, a case of agreed damages. It could receive no other construction. But what says Lord Mansfield, in his opinion, in that case? He remarks, p. 2228, that "there is a difference between covenants in general, and covenants *secured by a penalty or forfeiture. [227 In the latter case the obligee has his election. He may either

bring an action of debt for the penalty, and recover the penalty, after which recovery of the penalty he can not resort to the cove nant, because the penalty is to be a satisfaction for the whole; or, if he does not choose to go for the penalty, he may proceed upon the covenant, and recover more or less than the penalty *toties quoties.* And upon this distinction they proceed in courts of equity; they will relieve against a penalty upon a compensation; but where the covenant is to pay a particular liquidated sum, a court of equity can not make a new contract for a man, nor is there any room for compensation or relief. As in leases contain-ing a covenant against plowing up meadow, if the covenant be not to plow, and there be a penalty, a court of equity will relieve against a penalty, or will even go further than that, to preserve the substance of the agreement; but if it is worded to pay five pounds an acre for every acre plowed up, there is no alternative, no room for any relief against it, no compensation; it is the sub-stance of the agreement." This language is plain, direct, and unequivocal. The line of separation of cases of penalty from cases of liquidated damages is clearly laid down. The law is here set-tled upon a rational foundation, and strong must be the author-ities that shall overturn the decisions of such jurists as Eldon and Mansfield.

The following decisions, in this country, of which we have not leisure to give an analysis, strongly corroborate the view which we have taken of this question: Dennis *v.* Cummins, 3 Johns. 297; Stearns *v.* Barret, 1 Pick. 451; Perkins et al. *v.* Lyman, 11 Mass. 76; Merrill *v.* Merrill, 15 Mass. 488.

The rule laid down by our honorable friend, " that when the non-performance of an agreement or covenant, in its consequences, addresses to the forum of feeling, character, and standing, or future peace and happiness of the covenantee, the sum agreed upon must be considered as the rule of damages, or as liquidated damages," is doubtless entitled to credit for its originality, but not for its precision or soundness. It is wholly unsupported by authority. It is loose, indefinite, and incapable of being reduced to practice. What cases, we ask, would be adjudged to address themselves to 228] the \*forum of feeling? Scarcely a single case can arise that does not affect, directly or indirectly, in its bearing or conse-quences, some one or more of the numerous feelings which agitate the bosoms of parties *litigant.* What cases shall be deemed to

address themselves to the forum of character and standing. Perhaps a majority of cases address themselves, in one form or other, to that forum; but in attempting to discriminate those that do from those that do not, a judge would be obliged to exclaim, " *hic labor, hoc opus est.*" What cases shall be referred to the forum of future peace and happiness? It would puzzle a Jesuit to decide. The practical operation of the rule would make " confusion worse confounded," and render " darkness visible." Besides, the case does not come within the terms of the rule. The rule provides only for cases where the sum is agreed upon by the parties; a rule that would embrace a case like that of Lowe *v.* Peters, but not the present. In this case the damages are not agreed upon by the parties; but the performance of the contract is merely secured by a penalty. It is impossible for us to discover anything in the phraseology of the singular bond upon which the plaintiff has counted, manifesting an intention in the parties that the penalty should be considered as liquidated damages. It was, at most, a contract to marry. And if it be decided that the present is a case of liquidated damages, we can not perceive why the same rule can not apply to all bonds, securing the performance of covenants by penalties.

By the COURT:

We are of opinion that the penalty of the bond, in this case, can not be regarded as liquidated damages, and that the instrument ·is not one upon which covenant can be maintained. The demurrers are therefore sustained.

---

\*WILLIAM AND SAMUEL WATERS *v.* HUGH LEMMON. [229

On error to a decree in chancery, nothing examinable but bill, answer, exhibits made part of them, the decree, and matter made part of the case, by bill of exceptions.

Decree in equity, on complaint of a purchaser of land, rescinding the contract, and directing the purchase money to be refunded, and leaving the purchaser in unconditional possession of the land purchased, is erroneous.

THIS was a writ of error, brought to reverse a decree in chancery,